JOHN B. WALSH *vs.* SPENCER B. HOPKINS.

PROVIDENCE—FEBRUARY 18, 1901.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Mandamus. Cove Lands. Navigable Waters.*

In the plat of outlines made for the town of Providence in 1797, the "cove above Weybosset bridge" is shown as extending up to "Mill bridge." The plat was made in consequence of a vote of the town to appoint a committee to ascertain the boundaries of the cove, and was adopted by the town. In 1870 the State deeded to the city of Providence its interest in the "'cove lands,' being all the lands now or heretofore flowed by tide-water above Weybosset bridge." Subsequent to 1823 a basin was established by the Blackstone Canal Co., extending from the tide-lock opposite the present Haymarket street to the stone lock above "Mill bridge," "or however otherwise said cove and river is bounded." After the abandonment of the basin the tide flowed again over the area called the "cove lands." The east and west sides of the basin were built upon, confining the water between banks and apparently extending the Moshassuck river, which originally flowed into the salt water at the dam above "Mill bridge." The petitioner seeks to erect a building over the water at this point, which is called the Moshassuck river, claiming title. At the place in question the tide is perceptible, and in some parts the river-bed is below mean high water :—

*Held*, that the "cove above Weybosset bridge" extended up to "Mill bridge," as shown in the plat of outlines made in 1797.

*Held*, further, that by the deed of 1870 the city succeeded to the title of the State.

*Held*, further, that the title to all tide-flowed land being in the State, the water-course must be treated as public water.

*Held*, further, that being public waters, the maintenance of a building over the water by predecessors in title of the petitioner was by sufferance and not by right, and consequently the petitioner acquired no title to continue it.

*Held*, further, that the fact that the plat of the cove lands made at the time of the deed to the city stopped at Smith street bridge was immaterial, the deed making no reference to the plat and the terms of the grant including the land above it.

*Held,* further, that where the layout of a street bounds it on a river the line is carried to the river-bank, wherever it may be, irrespective of the fact that the street has not been worked its full width, and that the fact that a small strip of land was left in order to keep the street in a straight line would not amount to an abandonment of that part of the location.

MANDAMUS. The facts appear in the opinion. Petition denied.

STINESS, C. J. The petitioners ask for a writ of *mandamus* commanding the defendant, the inspector of buildings of the city of Providence, to issue a building permit. They propose to erect a building over what is called the Moshassuck river, claiming that they have title. The respondent sets up in his return that the title is in the city. This is an unusual proceeding to determine title to land; but as it is important to the parties to have it speedily passed upon in this way, we will consider it.

(1)     The decisive questions in the case are whether the river was a part of the public waters formerly called the cove lands, and, if so, whether it ceased to be such after the erection of the bridge at Smith street in 1798.

We think there can be no doubt that the "cove above Weybosset bridge" extended up to Mill bridge, as shown in the plat of outlines made by Daniel Anthony for the town of Providence May 31, 1797, on which the location of the "new bridge" at Smith street also appears. This plat was made in consequence of a vote of the town April 19, 1797, to appoint a committee to ascertain the boundaries of the cove, and was adopted by the town, thus showing what was understood to be the territory covered by the name "cove lands."

In 1823 a charter was given by the General Assembly to the Blackstone Canal Co., with authority to take land for the canal and for boat basins. A basin was established, as appears in the location filed in the Court of Common Pleas, extending from the tide-lock opposite the old jail lot, now Haymarket street, to the stone lock above Mill bridge, with boundaries stated, and the added statement "or however otherwise said cove and river is bounded."

In 1849 the canal company was authorized by the General Assembly to discontinue the canal, the lands covered by it reverting to the owners at the time of the location. Hence, as held in *Murphy* v. *Bullock*, 20 R. I. 35, the land in the basin reverted to the State.

In 1870 the State deeded to the city of Providence its interest "in and to the cove lands, so-called, in said city of Providence, being all the lands in said city of Providence now or heretofore flowed by tidewater above Weybosset bridge." As the land in question is south of Mill bridge, the city thereby became the owner, taking all the title of the State. After the abandonment of the canal basin and the removal of the locks, the tide again flowed in over the large area which was called the cove lands. Canal street was built upon the east side of the basin, and the westerly portion taken for railroad purposes, thus confining the water between banks and apparently extending the Moshassuck river, which originally flowed into the salt water at the ancient dam above—just above Mill bridge. As a consequence of these changes there has been less action of the tide than formerly, but the testimony shows that the tide is still perceptible at the place in question in this case, and that in some parts the river-bed is below mean high water. The case is presented by the petitioners as though the stream, not being navigable at this point, is a private stream. It has always been held in this State that the title to all tide-flowed land is in the State. *Gerhard* v. *Bridge Com'rs*, 15 R. I. 334 ; *Allen* v. *Allen*, 19 R. I. 114; *Prior* v. *Comstock*, 17 R. I. 1. Hence it follows that the water-course in this case must be treated as public waters, and that the maintenance of a building over the water by predecessors in title to the petitioners was by sufferance and not by right, and that they have acquired no title to continue it.

The fact that the plat of the cove lands, made at the time of the deed to the city, stopped at Smith street bridge is not material. The description in the deed made no reference to the plat ; and the terms of the grant, as we have seen, were such as to include the land above it.

As to the small strip on the east side of the river, we do

not find that the petitioners show title. We are inclined to think from the testimony that it is a part of the river-bed, as it is covered by ordinary spring flows; but this part does not become important, because the layout of the extension is bounded westerly on the Moshassuck river, thus carrying the line to the river-bank, wherever that may be. The petitioners argue that as the street is built the line falls east of the strip, and hence the street cannot be taken to go to the bank of the river. The description of the layout being clear, it is immaterial in this case whether the street is worked to its full width. The testimony shows that the wall follows the edge of the river for about half the distance from Smith street, and then it leaves a little strip of land on the west side in order to keep it in a straight line. This does not alter the location, nor is it sufficient to amount to an abandonment of that part of the location. Some inches of the strip are taken for the foundation of the wall. The claim of the petitioners that the line as actually used, rather than that of the record layout, should be taken as the line of the street is urged upon the authority of *Aldrich* v. *Billings*, 14 R. I. 233. The two cases are very different. The question in that case was not where the legal line of the street actually ran, but what was to be taken as the line intended in a deed between private parties. In that case the record showed a straight line touching four houses, but it appeared that to touch the middle two it would be "bowing" to the extent of an inch or two. The street, in fact, ran straight from the first to the last house, and it also appeared that the deflection in the original description was no more than would be accounted for by the imperfections of instruments used at that time. The complainant claimed that because a straight line could not have touched the other two houses, but still was to be parallel with the line of Westminster street, a line should be run from the middle houses, thus throwing out those at the two ends. The old houses had gone, except the two end ones, and the line of occupation had been a straight line between them before the deeds in question. Hence the court determined that such line must have been the one intended by the parties to the deed.

This raises the question, what is the line ? and the record answers it.

This disposes of the petitioner's claim of title to land on the east bank of the river. The bed of the river being tide-flowed land, with the river flowing down from above at times in large volume, it is evident that the channel must be kept clear. In *Murphy* v. *Bullock*, 20 R. I. 35, we held that any obstruction, such as piles, posts, and braces, would be serious obstacles to the stream on account of their tendency to hold silt and driftwood, and for other causes.

We are, therefore, of opinion that the petitioners show no right to the permit asked for, and the petition is dismissed.

*Thomas F. Murphy and Edward D. Bassett*, for petitioners.

*Francis Colwell, City Solicitor, and Albert A. Baker, Assistant City Solicitor*, for respondent.